PEOPLE v STRODDER

1. CRIMINAL LAW—ASSISTANCE OF COUNSEL—APPOINTED COUNSEL—
   TRIAL STRATEGY.

    A trial court did not abuse its discretion in denying defense
    counsel's motion to withdraw and defendant's request to re-
    lease his appointed attorney where, although in the early
    stages of trial differences of opinion did exist between defend-
    ant and counsel, most notably concerning the defendant's de-
    sire to waive a jury trial, those differences were not irreconcila-
    ble, defendant prevailed in his choice of strategy to be tried by
    the court rather than by jury, and during the subsequent
    course of his trial he expressed approval of his counsel on
    several occasions.

2. CRIMINAL LAW—EVIDENCE—POLICE PROCEDURE—PRIMARY ILLEGAL-
   ITY—INDEPENDENT SOURCE.

    The question whether there was any primary illegality where the
    police at a hospital through the assistance of the defendant's
    mother and without repeating the *Miranda* warnings, which
    had been given defendant at his arrest earlier, obtained a map
    showing the location of the murder victim's body will not be
    reached on appeal, where there was sufficient evidence to

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 21 Am Jur 2d, Criminal Law §§ 315, 321, 323.

Right of defendant in criminal case to discharge of, or substitution
of other counsel, for attorney appointed by court to represent
him, 157 ALR 1225.

[2] 21 Am Jur 2d, Evidence §§ 555–557.

Necessity of informing suspect of rights under privilege against self-
incrimination, prior to police interrogation, 10 ALR3d 1054.

[5, 11] 53 Am Jur, Trial § 967.

46 Am Jur 2d, Judges § 172.

[6] 31 Am Jur 2d, Expert and Opinion Evidence § 85 *et seq.*

[7, 8] 31 Am Jur 2d, Expert and Opinion Evidence § 42.

[9] 29 Am Jur 2d, Evidence § 249.

[10] 58 Am Jur, Witnesses §§ 31–33.

Prejudicial effect of improper failure to exclude from courtroom or
to sequester or separate state's witnesses in criminal case, 32
ALR2d 358.

conclude that by means of an independent source discovery of the victim's body was already in progress before the officer in possession of the map had arrived on the scene, and that defendant's palm print and wallet were found in the victim's truck as a result of information independent of the map.

3. Criminal Law—Trial Strategy—Assistance of Counsel—Effective Assistance.

Trial strategy in a criminal trial which proves to be error is not a basis for finding a denial of effective counsel.

4. Criminal Law—Defenses—Insanity—Assistance of Counsel—Effective Assistance.

Failure by defendant's counsel in preparation of an insanity defense to list properly two experts who had most recently examined the defendant did not deny defendant effective assistance of counsel where, from the record, it appears that this was partially due to defendant's strategy to rely more heavily upon his alternate defense of general denial, and where, contemporaneous with the trial court's ruling that experts not listed in the notice to the prosecution would not be permitted to testify, there was a specific suggestion by the court to make an offer of proof regarding the information possessed by these experts and no such offer was made.

5. Criminal Law—Mistrial—Assistance of Counsel—Effective Assistance.

Failure of defendant's counsel to move for a mistrial when suggested by the trial judge himself after antagonism arose between defendant's counsel and the judge did not demonstrate a denial of effective assistance of counsel, where the decision not to request a mistrial was one of strategy discussed by the defendant and his attorney, and where, after an examination of the record as a whole, the Court of Appeals is unable to conclude that with new counsel a different decision may very well result.

6. Criminal Law—Defenses—Insanity—Evidence—Expert Witnesses—Admissibility.

Expert testimony on behalf of the prosecution by persons who had participated in an examination to determine defendant's competency to stand trial regarding defendant's sanity is statutorily inadmissible when there is an objection by the defense to this testimony, but the testimony will be permitted where there was a prior stipulation at an early stage of the prosecution allowing for counsel to furnish each other with copies of the

written psychiatric reports of their respective psychiatrists for the purpose of assisting in the preparation of the case for trial (MCLA 767.27a[4]).

7. CRIMINAL LAW—DEFENSES—INSANITY—EXPERT WITNESSES—ADMISSIONS.

It was not reversible error for a psychiatrist to testify for the prosecution regarding the issue of defendant's guilt after defendant had testified that admissions he made during the course of his stay at the Center for Forensic Psychiatry were lies, where the defendant brought the self-incriminating evidence obtained during the psychiatric examination into the case first and one of the reasons the psychiatrist was called to the stand was to rebut defendant's contention that the admissions were fabricated.

8. CRIMINAL LAW—EXPERT WITNESSES—PSYCHIATRISTS—CREDIBILITY—COMMON EXPERIENCE.

A psychiatrist's expertise, experience, and ability in detecting liars has been recognized, but opinions regarding the credibility of a witness are within the common experience and therefore not usually a proper subject for expert testimony.

9. CRIMINAL LAW—EVIDENCE—IRRELEVANT TESTIMONY—ADMISSIBILITY —DEFENSES—INSANITY.

Admission in a nonjury murder trial of irrelevant testimony concerning the likelihood that defendant would commit similar crimes in the future was harmless error, even though facts regarding the sanity of a defendant must be related to sanity at the time of the act charged, and what a defendant might do is neither material nor relevant and is legally prejudicial, where the court's recorded statement of its reasons for finding the defendant guilty showed a reliance principally on defendant's confession in addition to the discovery of defendant's wallet and palm print in the victim's truck, and the court made no mention of the irrelevant prognosis and its admission into evidence during the trial.

10. CRIMINAL LAW—WITNESSES—SEQUESTRATION—DISCRETION.

Denial of defendant's motion to sequester expert witnesses for the prosecution was not an abuse of the trial court's discretion where defendant showed no actual prejudice from the court's refusal to sequester the experts other than the fact that in the opinion of both experts the defendant was criminally responsible at the time of the crime, because any inconsistencies

between the testimony are as compatible with the truth as with an inference of collaboration.

11. CRIMINAL LAW—JUDGES—DISQUALIFICATION—TRIAL STRATEGY.

A trial judge's failure to remove himself from a murder trial was not error where defendant made no showing that the judge was personally biased, and where, although the judge acknowledged knowing the victim's husband, the defendant chose to submit the factual issues to this judge and at trial declined to follow the judge's suggestion that defense counsel move for a mistrial.

Appeal from Genesee, Philip C. Elliott, J. Submitted Division 2 January 8, 1973, at Lansing. (Docket No. 13131.) Decided April 24, 1973. Leave to appeal granted, 390 Mich 772.

Mandric V. Strodder was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Martin F. Palus* and *Joel B. Saxe,* Assistant Prosecuting Attorneys, for the people.

*Richard S. McMillin,* Assistant State Appellate Defender, for defendant.

Before: BRONSON, P. J., and McGREGOR and DAN-HOF, JJ.

DANHOF, J. Defendant was charged with first-degree murder. MCLA 750.316; MSA 28.548. He waived a jury, and after a trial covering approximately 29 days was found guilty as charged. He was sentenced to life imprisonment and appeals.

At trial defendant presented two defenses: (1) lack of criminal responsibility due to insanity, and

(2) innocence based upon a claim that the victim was murdered by her own husband, who had hired the defendant to take the blame.

The victim, Sally Ann Wright, died as a result of strangulation. The time of her death was fixed at approximately mid-afternoon on September 28, 1970. Her body was found in the Flint River near a site described by the defendant to his mother. A van-type truck, which the victim was driving on the day of her death, was found in the Taystee Bread parking lot in Flint. A palm print made by the defendant and the defendant's wallet were found in the van. The van was brought to the attention of the police by an employee of the baking company. The defendant was identified as the same man seen in the parked van going through a woman's purse and later hurrying away from the lot.

The defendant's mother testified that, on the day of the crime, her son came home and told her that he had raped and killed a woman, that he had thrown her body in the river, and that he had left her van in the Taystee Bread parking lot. Finally, he asked her to help him find his wallet which he had lost. After riding past the lot where the van had been abandoned and finding the police already there, the defendant asked his mother to drive to the site where the body had been thrown into the river in hopes that he could recover his wallet there. The defendant's mother further testified that she persuaded him that this was not the thing to do. They then drove to an attorney's office and, following consultation, the defendant and his mother went to the Snead Psychiatric Clinic where the defendant had been undergoing preliminary interviewing and testing. At the clinic they were met by the police and defendant was arrested. At

this time, the defendant was given the *Miranda* warnings.

Several hours later, the defendant's mother obtained a map from him describing the location where the victim's body was thrown. However, officers using the map were met at the already discovered scene by an officer who had arrived there using a general description previously given by the defendant's mother. These directions had been given to the police by the defendant's mother before she had obtained the map from her son and they were based on information that the defendant had given her before the time of his arrest.

In his own defense, defendant testified that the victim's husband had offered to get him off from a prior charge of rape and that, because the victim's husband knew people in high places, the defendant would receive at most a four-year sentence for the instant crime for which he was to take the blame. Also the victim's husband allegedly offered to pay the defendant some money. Further testimony by the defendant was to the effect that the victim's husband and the defendant arranged for the defendant to take the victim's van to the Taystee Bread parking lot, leave a palm print and make a confession to his mother. The defendant testified that he waived a jury trial because he believed his deal was "all set" when the judge said he knew the victim's husband. When it allegedly became apparent to the defendant that he had been double-crossed, he testified that all of his prior admissions concerning the offense were faked and false.

Doctor Edelbert Rogers, who had examined the defendant in 1968, testified on behalf of the defendant that because of defendant's emotional instability and inability to rationally deal with sexual matters, he was not criminally responsible for

the charged act. Two other proposed experts for the defendant were excluded because of insufficient statutory notice regarding their appearance on the matter of criminal responsibility. MCLA 768.20–768.21; MSA 28.1043–28.1044. Mr. David Shapiro and Doctor Ames Robey for the prosecution testified that defendant did know what he was doing and was able to control his actions at the time of the crime. These latter two experts were both from the Center for Forensic Psychiatry in Ypsilanti and had participated in an examination of the defendant to determine whether he was mentally competent to stand trial.

Defendant raises several allegations of error which are hereinafter discussed.

## I

Defendant contends that it was error for the trial court to deny defense counsel's motion to withdraw and defendant's request to release his appointed attorney. In the early stages of trial, differences of opinion did exist between defendant and counsel, most notably concerning the defendant's desire to waive a jury trial. However, although there were differences of opinion, they were not irreconcilable. *People v Charles O Williams,* 386 Mich 565, 576 (1972). Defendant prevailed in his choice of strategy to be tried by the court rather than by jury. During the subsequent course of his trial, defendant expressed approval of his counsel on several occasions. On these facts, it was not an abuse of discretion to deny the motion to withdraw.

## II

It is contended that certain evidence was admit-

ted in violation of the defendant's Fifth Amendment rights and that the admission of this evidence, notwithstanding the absence of an objection, constitutes reversible error. After the defendant had been arrested and given the *Miranda* warnings he was transferred to the psychiatric ward of Hurley Hospital. There the above-described map was obtained from the defendant by the police through the assistance of the defendant's mother. The defendant contends that the map was illegally obtained because the *Miranda* warnings were not repeated and that by it essential elements of the corpus delicti were discovered. We do not reach the question of whether there was any primary illegality in obtaining this map because there was sufficient evidence at trial for us to conclude that by means of an independent source discovery of the victim's body was already in progress before the officer in possession of the map had arrived on the scene, and that the defendant's palm print and wallet were found as a result of information independent of the map. *Silverthorne Lumber Co v United States,* 251 US 385; 40 S Ct 182; 64 L Ed 319 (1920); *Wong Sun v United States,* 371 US 471, 83 S Ct 407; 9 L Ed 2d 441 (1963); *United States v Wade,* 388 US 218, 242; 87 S Ct 1926, 1940; 18 L Ed 2d 1149, 1166 (1967).

III

Defendant claims that he was denied effective assistance of counsel. Although defendant's counsel failed to consult with him personally for a substantial period of time prior to trial, counsel did indicate that he had been preparing the case and working with defendant's mother before trial. Our inquiry must focus on whether any actual

prejudice arose from lack of consultation. *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970). The defendant does not argue that a requested consultation was refused, but rather points to differences in trial strategy. Trial strategy which proves to be error is not a basis for finding a denial of effective counsel. *People v Budrick,* 40 Mich App 647, 652 (1972); *People v Burd,* 39 Mich App 22, 25 (1972).

More serious is the contention that counsel did not adequately prepare the insanity defense by failing to properly list two experts who had most recently examined the defendant. However, from the record, it appears that this was partially due to defendant's strategy to rely more heavily upon his alternate defense of general denial. Also, contemporaneous with the trial court's ruling that experts not listed in the notice to the prosecution would not be permitted to testify was a specific suggestion by the court to make an offer of proof regarding the information possessed by these experts. No such offer was made. In its absence we do not find the court's exclusion of these experts to have been an abuse of discretion.

Defendant argues that antagonism arose between his trial counsel and the trial judge, that the failure of his attorney to move for a mistrial—when suggested by the judge himself—demonstrates a denial of effective assistance of counsel. The decision not to request a mistrial was one of strategy discussed by the defendant and his attorney. *People v Budrick, supra.* After an examination of the record as a whole, we are unable to conclude that with new counsel a different decision may very well result. *People v Degraffenreid,* 19 Mich App 702, 718 (1969); *People v Bottany,* 43 Mich App 375, 381 (1972).

IV

Defendant contends that the trial court committed reversible error by admitting expert testimony on behalf of the prosecution regarding defendant's sanity because such testimony was inadmissible pursuant to MCLA 767.27a(4); MSA 28.966(11)(4). In construing this statute our Supreme Court in the case of *People v Martin,* 386 Mich 407, 425 (1971) held:

"[A] psychiatrist who conducts such a forensic psychiatric examination may not be called to testify in the criminal trial if there is an objection to the admission of such testimony by defendant."

See also *People v Schneider,* 39 Mich App 342 (1972) and *People v Garland,* 44 Mich App 243 (1972). The distinguishing characteristic of the instant case is that, although there was an objection by the defense to this testimony, there was a prior stipulation at an early stage of the prosecution and upon which the people relied in the preparation of their case. The relevant portions of the stipulation read as follows:

"That since Defendant intends to interpose the defense of insanity at a trial of the above entitled matter, the parties, through their respective counsel, hereby stipulate that Defendant, Mandric Strodder, shall be examined by psychiatrists for Defendant and psychiatrists for the State, said examinations being for the purpose of allowing Defendant and the State to prepare their case on the issue of criminal responsibility.

\* \* \*

"That for the sake of expediency it is hereby stipulated that defendant's psychiatric examinations on the issue of criminal responsibility may be conducted during his stay at the diagnostic facility for the psychiatric

examination on the issue of competency to stand trial heretofore ordered by this Court.

"That it is finally stipulated that upon completion of the psychiatric examinations of defendant Mandric Strodder, counsel for the respective parties will furnish each other with copies of the written psychiatric reports of their respective psychiatrists, said exchange being for the purpose of assisting counsel for Defendant and the State in the preparation of their case for trial."

Neither this stipulation nor the court's order based thereon transferring the defendant to the Center for Forensic Psychiatry mention an independent psychiatrist or psychologist for the examination on the issue of criminal responsibility. Since qualified personnel from the center were agreed upon for the conduct of both examinations, we do not find grounds for reversal. We note parenthetically that, although Mr. Shapiro and Doctor Robey did testify at trial regarding the sanity of the defendant, they did not testify at the competency proceedings.

## V

It is contended that witnesses for the prosecution, who examined the defendant to determine his sanity, were erroneously permitted to testify regarding the issue of defendant's guilt. We have noted that defendant's mother testified at length concerning admissions made to her. When defendant took the stand, he testified that these statements, together with similar admissions made during the course of his stay at the Center for Forensic Psychiatry, were lies made because he thought that the victim's husband was working to help him. Defendant thus brought the self-incriminating evidence obtained during the psychiatric examination into the case first. One of the reasons that

Doctor Robey was called to the stand was to rebut defendant's contention that the admissions were fabricated. *People v Stevens,* 386 Mich 579 (1972) is therefore inapplicable because the substance of the psychiatric examination had been previously introduced by the defendant's own testimony.

Since defendant himself introduced the self-incriminating statements, admitting Doctor Robey's opinion as to their truthfulness was not error of constitutional dimensions. If there was error, it stems rather from the commonly accepted scope of impeachment evidence by way of rebuttal testimony. Dr. Robey's opinion as to the truthfulness of defendant's statements at the center became, under the circumstances, an expert opinion on the credibility of defendant as a witness. While a "psychiatrist's expertise, experience, and ability in detecting liars" has been recognized by this Court, *People v Herrera,* 12 Mich App 67, 79 (1968), opinions regarding the credibility of a witness are within the common experience and therefore not usually a proper subject for expert testimony. For exceptions to the general rule see 20 ALR3d 684.

Since the error here was not of constitutional dimensions, we are free to review on a standard of "miscarriage of justice". MCLA 769.26; MSA 28.1096. However, even if we apply the very exacting standard used in review of constitutional error, we are confident in holding that the admission of Doctor Robey's opinion was harmless beyond all reasonable doubt. *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967); *People v Robinson,* 386 Mich 551, 563 (1972). The overwhelming evidence against the defendant was traversed only by his incredible story that the crime was committed by the victim's husband who hired him to take the blame. Even absent Dr. Robey's

opinion, there could be no doubt in the mind of the trier of fact as to defendant's guilt.

## VI

Defendant contends that the trial court committed reversible error in admitting over objection irrelevant testimony concerning the likelihood that defendant would commit similar crimes in the future. Facts regarding the sanity of a defendant must be related to sanity at the time of the act charged, and what a defendant might do is neither material nor relevant and is legally prejudicial. *People v Zabijak*, 285 Mich 164, 184–185 (1938). However, since trial was by the court rather than by jury, we have a statement on the record of the court's reasons for finding the defendant guilty. It is clear that the court relied principally on defendant's confession to his mother in addition to the discovery of defendant's palm print and wallet in the victim's van. The court made no mention of the irrelevant prognosis and its admission into evidence during the trial was therefore harmless.

## VII

Defendant lastly contends that the trial court erred in denying defendant's motion to sequester expert witnesses for the prosecution and in the judge's failure to remove himself pursuant to GCR 1963, 405.1(3). Defendant shows no actual prejudice from the court's refusal to sequester the experts other than the fact that in the opinion of both experts the defendant was criminally responsible at the time of the crime. Any consistencies between the testimony are as compatible with the truth as with an inference of collaboration. *People v Williams*, 6 Mich App 412 (1967). The court's

denial of the motion to sequester was not an abuse of discretion. *People v Martin,* 386 Mich 407, 424, 425 (1971).

Regarding the trial judge's failure to remove himself, defendant has made no showing that the trial judge was personally biased. *People v Cavataio,* 34 Mich App 126 (1971). The trial judge acknowledged knowing the victim's husband. Yet, the defendant chose to submit the factual issues to this judge and at trial declined to follow the judge's suggestion that defense counsel move for a mistrial.

Examination of the record discloses that the tactics of the defendant's counsel made this a very difficult and somewhat exasperating case to try. We commend the trial judge for his conduct and in retaining his composure and objectivity under the most trying circumstances.

Affirmed.

All concurred.